IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| BERNICE MURPHY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 2:17-cv-347-SRW |
| ) | [wo] |
| NANCY A. BERRYHILL, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM OPINION AND ORDER**

Bernice Murphy applied for disability insurance benefits under Title II of the Social Security Act ("the Act") alleging a disability date of May 31, 2012. (R. 190-91). The application was denied initially and on reconsideration. (R. 82-116). A hearing was held before the Administrative Law Judge ("ALJ"). (R. 44-78). The ALJ rendered an unfavorable decision on July 31, 2015. (R. 24-37). The Appeals Council denied Plaintiff's request for review. (R. 1-6). As a result, the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner"). *Id*. Judicial review proceeds pursuant to 42 U.S.C. § 405(g), and 28 U.S.C. § 636(c). After careful scrutiny of the record and briefs, for reasons herein explained, the Court concludes that the Commissioner's decision is due to be **AFFIRMED**.

### **I. NATURE OF THE CASE**

Murphy seeks judicial review of the Commissioner's decision denying her application for disability insurance benefits. United States District Courts may conduct

limited review of such decisions to determine whether they comply with applicable law and are supported by substantial evidence. 42 U.S.C. § 405. The Court may affirm, reverse and remand with instructions, or reverse and render a judgment. *Id.*

## II.  STANDARD OF REVIEW

The Court's review of the Commissioner's decision is a limited one. The Court's sole function is to determine whether the ALJ's opinion is supported by substantial evidence and whether the proper legal standards were applied. *See Jones v. Apfel,* 190 F.3d 1224, 1228 (11th Cir. 1999); *Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir. 1983).

"The Social Security Act mandates that 'findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive.'" *Foote v. Chater,* 67 F.3d 1553, 1560 (11th Cir. 1995) (quoting 42 U.S.C. §405(g)). Thus, this Court must find the Commissioner's decision conclusive if it is supported by substantial evidence. *Graham v. Apfel,* 129 F.3d 1420, 1422 (11th Cir. 1997). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir. 1997) (citing *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)); *Foote,* 67 F.3d at 1560 (citing *Walden v. Schweiker,* 672 F.2d 835, 838 (11th Cir. 1982)).

If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the evidence preponderates against the Commissioner's findings. *Ellison v.*

*Barnhart,* 355 F.3d 1272, 1275 (11th Cir. 2003); *Edwards v. Sullivan,* 937 F.2d 580, 584 n.3 (11th Cir. 1991) (quoting *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986)). The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote,* 67 F.3d at 1560 (citing *Chester v. Bowen,* 792 F.2d 129, 131 (11th Cir. 1986). The Court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]," but rather it "must defer to the Commissioner's decision if it is supported by substantial evidence*." Miles v. Chater,* 84 F.3d 1397, 1400 (11th Cir. 1997) (quoting *Bloodsworth,* 703 F.2d at 1239).

The Court will also reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan,* 936 F.2d 1143, 1145 (11th Cir. 1991)). There is no presumption that the Commissioner's conclusions of law are valid. *Id*.; *Brown v. Sullivan,* 921 F.2d 1233, 1236 (11th Cir. 1991) (quoting *MacGregor,* 786 F.2d at 1053).

### III. STATUTORY AND REGULATORY FRAMEWORK

The Social Security Act's general disability insurance benefits program ("DIB") provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence. See 42 U.S.C. § 423(a). The Social Security Act's Supplemental Security Income ("SSI") is a separate and distinct program. SSI is a general public assistance measure providing an additional resource to the aged, blind, and disabled to assure that their income does not fall below the

poverty line. Eligibility for SSI is based upon proof of indigence and disability. See 42 U.S.C. §§ 1382(a), 1382c(a)(3)(A)-(C). However, despite the fact that these are separate programs, the law and regulations governing a claim for DIB and a claim for SSI are identical; therefore, claims for DIB and SSI are treated the same for the purpose of determining whether a claimant is disabled. *Patterson v. Bowen,* 799 F.2d 1455, 1456 n. 1 (11th Cir. 1986). Applicants under DIB and SSI must prove "disability" within the meaning of the Social Security Act which defines disability in virtually identical language for both programs. *See* 42 U.S.C. §§ 423(d), 1382c(a)(3), 1382c(a)(3)(G); 20 C.F.R. §§ 404.1505(a), 416.905(a). A person is entitled to disability benefits when the person is unable to

> [e]ngage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner of Social Security employs a five-step, sequential evaluation process to determine whether a claimant is entitled to benefits. See 20 C.F.R. §§ 404.1520, 416.920 (2010).

(1) Is the person presently unemployed?

(2) Is the person's impairment(s) severe?

(3) Does the person's impairment(s) meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?

(4) Is the person unable to perform his or her former occupation?

(5) Is the person unable to perform any other work within the economy?

An affirmative answer to any of the questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen,* 800 F.2d 1026, 1030 (11th Cir. 1986).

The burden of proof rests on a claimant through Step 4. *See Phillips v. Barnhart,* 357 F.3d 1232, 1237-39 (11th Cir. 2004). Claimants establish a *prima facie* case of qualification for disability once they meet the burden of proof from Step 1 through Step 4. At Step 5, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform. *Id.*

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). *Id.* at 1238-39. The RFC reflects what the claimant is still able to do despite his or her impairments and is based on all relevant medical and other evidence. *Id.* It also can contain both exertional and nonexertional limitations. *Id.* at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine whether there are jobs available in the national economy which the claimant can perform. *Id.* at 1239. To make this determination, the ALJ can either use the Medical Vocational Guidelines ("grids") or hear testimony from a vocational expert ("VE"). *Id.* at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. *Id.* at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id.*

## IV. ADMINISTRATIVE FINDINGS AND CONCLUSIONS

Plaintiff was 54 years old at the time of the ALJ's decision. (R. 37, 190). Plaintiff graduated from high school and worked in the past as a cashier, cook, line server, waitress, and housekeeper. (R. 50, 70, 236). She retired in 2008 and has not worked since. (R. 50-52). Plaintiff alleged disability onset on May 31, 2012, due to vertigo, high blood pressure, diabetes, high cholesterol, and obesity. (R. 190, 235).

The ALJ found that Plaintiff's severe impairments included the following: "diabetes mellitus, hypertension, chronic kidney disease, sensorineural hearing loss, and acoustic neuroma, psychogenic non-epileptic episodes with vertigo, anxiety and depression." (R. 26). Based on these impairments, the ALJ found that Plaintiff retained the residual functional capacity to perform a reduced range of medium work as follows:

> The claimant is able to sit, stand, and walk for six hours out of an eight hour workday. She is able to lift and carry 25 pounds frequently and 50 pounds occasionally. She should never climb ropes, ladders, or scaffolds. She is able to frequently climb stairs and ramps; and frequently balance, stoop, kneel, crouch, and crawl. She can have frequent exposure to extreme heat and humidity. She should not be exposed to hazards such as moving machinery and unprotected heights. The claimant is unable to perform working requiring frequent speaking, such as a telephone solicitor, or work requiring frequent conversations with the public. She cannot perform public speaking and should only have incidental public contact. The claimant is

> capable of understanding, remembering, and following simple instructions, and is able to sustain attention, persistence, and pace for simple tasks.

(R. 30). Based on this RFC, the ALJ found that Plaintiff was unable to perform her past relevant work. However, there were a significant number of jobs in the national economy that she could perform. Thus, the ALJ found her not disabled at Step 5 of the Social Security sequential evaluation. (R. 36-37, 46).

## V. MEDICAL HISTORY

The Court adopts, in large part, the facts as set out in Plaintiff's brief pertaining to her medical history. (Doc. 14 at pp. 2-4). In April 2011, Plaintiff hit her head. She felt dizzy and went to the emergency room, where she was treated for blunt head trauma. (R. 400-03). She continued to work full time until May 2012, when she developed vertigo and headaches. (R. 358-74).

On May 26, 2012, Murphy was hospitalized and treated for weakness, dizziness, headaches, and hyponatremia. (R. 360-74). A June 2012 carotid doppler study, and a July 2012 MRA circle of Willis study were within normal limits. (R. 356-57, 515). On July 7, 2012, an MRI of Plaintiff's brain revealed a 2.5mm pituitary cyst, and a small nodule in the right auditory canal. (R. 514-15). On July 16, 2012, Murphy was treated at the emergency room for headaches, dizziness and an altered mental state. Dizziness and anxiety were diagnosed. (R. 518-29). On September 6, 2012, an ENT specialist diagnosed vertigo, hearing loss and an acoustic neuroma. (R. 445-47).

On September 20, 2012, neurologist LaTai Grant-Brown, MD, evaluated Murphy, who relayed a "complicated history." Specifically, she described "spells" during which

she was unable to walk or talk, did not understand what others were saying, shook ("like she is having a 'seizure'"), and could not maintain her balance. An EEG ruled out epilepsy. (R. 616-19). Dr. Grant-Brown diagnosed "spells, likely nonepileptic events" and vertigo with a small auditory canal lesion. She did not find "neurological reasons" for Murphy's episodes. Rather, she noted that they could be psychiatric in nature. Topamax and Fioricet were prescribed for headaches. (R. 617-18). Murphy continued to see Dr. Grant-Brown through November 2014. (R. 616-28, 751-55).

On January 30, 2013, Murphy was admitted for diagnostic video EEG monitoring. (R. 474-89). An event was documented during which Plaintiff "had staring, leg movements, inability to respond and made humming sounds." There was no EEG correlate; psychogenic non-epileptic spells ("PNES") were diagnosed. (R. 475-89).

Between March and April 2013, Murphy completed physical therapy for ataxia and impaired ability to walk and balance. (R. 532-47, 567-68). On April 4, 2013, Plaintiff suddenly was unable to respond to others and began humming. She was taken to the emergency room for evaluation and treatment. (R. 548-66). On June 9, 2014, an ENT specialist diagnosed vertigo, sensorineural hearing loss, acoustic neuroma, sleep apnea and otalgia secondary to TMJ. (R. 602-13). On June 15, 2014, Plaintiff suffered a "grand mal tonic clonic seizure." She was admitted to the hospital for one night; discharge diagnoses included headaches and seizure. A brain CT was within normal limits. (R. 631-32, 648).

In addition to PNES and related symptoms, Plaintiff developed depression, decreased concentration and anxiety. (R. 484). Beginning in August 2012 and through 2014, Plaintiff was prescribed Paxil for depression and Klonopin for anxiety. (R. 569-97.

754-807). On May 23, 2013, Murphy was evaluated at New Horizons Community Service by Danine Lajiness-Polosky, Advanced Practice Registered Nurse and Psychiatric Mental Health Nurse Practitioner. Plaintiff was diagnosed with Mental Disorder NOS secondary to head trauma, and anxiety disorder was added in October 2013. (R. 843-44). Murphy continued medication management and worked with a "community support individual" (R. 839-44). In April 2014, Murphy was referred to group therapy-psychosocial rehabilitation and cognitive behavioral therapy. (R. 816, 675-93).

## VI. ISSUES

(1) Whether the ALJ erred by rejecting the state agency examining physician's opinion?

(2) Whether the ALJ erred by adopting a state agency record-reviewing, non-examining physician's opinion?

(3) Whether the ALJ erred in evaluating Plaintiff's credibility?

## VII. ANALYSIS

**A. The ALJ properly considered the opinion of the state agency examining physician's opinion.**

Plaintiff argues that the ALJ erred by rejecting the opinion of the state agency examining physician, Dr. Williamson. The law is well settled on this point; the opinion of a one-time examining source is not entitled to great weight because there is no treatment relationship between the doctor and patient. *See McSwain v. Bowen,* 814 F. 2d 617, 619 (11th Cir. 1987). Moreover, an opinion about whether a plaintiff is disabled is not a medical opinion entitled to significant weight because that issue is dispositive of the case. *See, Hutchinson v. Astrue,* 408 F. App.'x 324, 327 (11th Cir. 2011). Thus, the ALJ was not

required by law to give the disability opinion of Dr. Williamson, a non-treating, examining physician, great weight.

Further, Plaintiff argues that the ALJ erred by neither mentioning nor applying the regulatory factors to Dr. Williamson's opinion. However, the Eleventh Circuit has held that ALJs are "not required to explicitly address each of those factors" but rather must provide good cause to reject a treating physician's opinion. *See Lawton v. Comm'r of Soc. Sec.*, 431 F. App.'x 830, 833 (11th Cir. 2011). Indeed, "absent 'good cause,' an ALJ is to give the medical opinions of treating physicians 'substantial or considerable weight." *Winschel v.Comm'r of Soc. Sec.,* 631 F.3d 1176, 1179 (11th Cir. 2011) (citations omitted). However, "good cause" to stray from the treating physician's opinion exists when (1) the treating physician's opinion was not supported by the evidence, (2) the evidence supported a contrary finding, or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Winschel,* 631 F.3d at 1179. If the ALJ does stray from the treating physician's opinion, he or she "must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error." *Lewis*, 125 F.3d at 1440 (citations omitted).

Even though Dr. Williamson was not a treating physician, the ALJ clearly set forth his reasons for discounting the doctor's opinion that Plaintiff could only perform at the sedentary level. Indeed, the ALJ stated as follows:

> Dr. Williamson's opinion, which describes a sedentary exertion level, is inconsistent with his own report in which he purported that all of the claimant's range of motions and strength levels were normal . . . . The claimant's transfers and gait seem to be restricted due to observed apprehension rather than to physical impairments. . . . Dr. Williamson's examination and other clinical work

ups show no organic basis for the claimant's symptoms . . . Full range of motion and normal strength levels indicate that the claimant can perform more than sedentary work. Accordingly, the undersigned gives Dr. Williamson's opinion little weight.

(R. 35). Thus, the ALJ did more than the law required in setting forth his reasons for discounting Dr. Williamson's opinion. Furthermore, the ALJ specifically discussed Dr. Williamson's finding that Plaintiff's balance was "fair." (R. 34, 458). Additionally, the ALJ noted evidence from Plaintiff's physical therapy sessions, in March and April of 2013, that indicated "no loss of balance with gait, good heel strike and toe off with arm swing"; no reports of pain or dizziness; no episodes of dipping or buckling during treatment; and no failure to meet any goal. (R. 32-34, 540, 547, 568). Accordingly, the Court concludes that the ALJ properly considered the opinion of Dr. Williamson.

**B. The ALJ appropriately considered a state agency record-reviewing, non-examining physician's opinion.**

Plaintiff argues that the ALJ erred in adopting the opinion of Dr. Terry W. Banks, a non-examining physician. The ALJ gave great weight to Dr. Banks' opinion that Plaintiff could function consistently within a range of medium work. (R. 34, 91-92). The ALJ concluded that this opinion was consistent with the medical record, particularly Dr. Williamson's objective findings on range of motion and strength as well as Plaintiff's abilities in physical therapy. (R. 34). Plaintiff argues that the ALJ erred in failing to apply the regulatory factors which caused Dr. Banks' opinion as a non-examining source to be due less weight than that of Dr. Williamson, an examining source. However, the Eleventh Circuit has held that there is no error in giving greater weight to a non-examining source where the ALJ properly

discounts the treating source opinion, and the non-examining opinion was consistent with the record. *See Forrester v. Comm'r of Soc. Sec.,* 455 F. App.'x 899, 902-03 (11th Cir. 2012) ("The evidence supported a contrary conclusion to . . .[the treating physician's] opinion, and the ALJ was not prohibited from reaching that conclusion simply because non-treating physicians also reached it."). For the reasons stated above, including the evidence of Plaintiff's abilities in physical therapy, the Court concludes that the ALJ properly discounted Dr. Williamson's opinion and did not err in determining that Dr. Banks' opinion was consistent with the record. (R. 34). Accordingly, the Court concludes that the ALJ properly considered the opinion of the non-examining physician.

### C. The ALJ did not err in evaluating Murphy's credibility.

Plaintiff argues that the ALJ erred in evaluating Plaintiff's credibility. The Social Security Regulations provide that a claimant's subjective complaints of pain cannot alone establish disability. Rather the Regulations describe additional objective evidence that is necessary to permit a finding of disability. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 404.1529. Interpreting these regulations, the Eleventh Circuit has articulated a "pain standard" that applies when a claimant attempts to establish disability through her own testimony of pain or other subjective symptoms. This standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence confirming the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can reasonably be expected to cause the alleged pain. *Foote v. Chater,* 67 F. 3d 1553, 1560 (11th Cir. 1995); *Holt v. Sullivan,* 921 F.2d 1221, 1223. (11th Cir. 1991).

In this circuit, the law is clear. The Commissioner must consider a claimant's subjective testimony of pain if he or she finds evidence of an underlying medical condition and the objectively determined medical condition is of a severity that reasonably can be expected to give rise to the alleged pain. *Mason v. Bowen,* 791 F.2d 1460, 1462 (11th Cir. 1986); *Landry v. Heckler,* 782 F. 2d 1551, 1553 (11th Cir. 1986). Thus, if the Commissioner fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, the Commissioner has accepted the testimony as true as a matter of law. This standard requires that the articulated reasons be supported by substantial evidence. If there is no such support, then the testimony must be accepted as true. *Hale v. Bowen,* 831 F.2d 1007, 1012 (11th Cir. 1987).

In the instant action, the ALJ concluded that "the medical evidence . . . in this case fail[s] to provide strong support for the claimant's allegations of disabling symptoms and limitations. . . [and] do[es] not support the existence of limitations greater than the above listed residual functional capacity " (R. 32). Specifically, the ALJ pointed to unremarkable examination findings including no neurological abnormalities and a broad-based but otherwise normal gait in 2012. (R. 32, 417, 447). Also, the ALJ noted evidence which suggested that Plaintiff's vertigo symptoms were improved by medication, and physical therapy evidence in April 2013 which reflected that Plaintiff reported no balance problems. (R. 32, 445, 547). Additionally, as discussed above, the ALJ noted Dr. Williamson's findings of full strength and ranges of motion, and Plaintiff's physical therapy treatment records which showed no balance complaints and that Plaintiff ultimately met all goals. (R. 33, 458-63, 540, 547, 568). Indeed, the ALJ concluded that this evidence did not

support Plaintiff's testimony that she could only stand for 10 or 15 minutes, walk a short distance and lift no more than two pounds. (R. 34, 58-59).

With respect to Plaintiff's mental health conditions, the ALJ noted that consultative examiner Dr. Cerjan offered the opinion that Plaintiff was capable of understanding and carrying out simple instructions, her pace appeared adequate, she was capable of basic social skills and, overall, she appeared capable of adapting to work related stress. (R. 33-34, 455). Further, the ALJ noted that records showed that in 2014 Plaintiff's medication was controlling her depression, with no affective symptoms. (R. 34, 588). In addition, in discounting Plaintiff's credibility, the ALJ noted that Plaintiff testified that she needed assistance from her husband, but reported to her mental health counselor that he was in renal failure and they looked after each other. (R. 34, 56-57, 824). Accordingly, the Court concludes that the ALJ gave specific reasons for discounting Plaintiff's credibility and, based upon the court's independent review of the record, that substantial evidence supports these reasons.

### VIII. CONCLUSION

Pursuant to the findings and conclusions detailed in this *Memorandum Opinion*, the Court AFFIRMS the Commissioner's decision.

A separate judgment will be entered by separate order.

Done, on this the 18th day of October, 2018.

/s/ Susan Russ Walker
Susan Russ Walker
United States Magistrate Judge